United States District Court
Southern District of Texas
**ENTERED**
September 01, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| DONALD WASHINGTON III, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:26-cv-00205 |
| | § | |
| NAVY FEDERAL CREDIT UNION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. 39. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be granted in part and denied in part.

## BACKGROUND

Plaintiff Donald Washington III, representing himself, complains that although he paid a home loan in full and Navy Federal Credit Union confirmed receipt of his payment, Navy Federal "acted in bad faith by reversing those payments and wrongfully initiating foreclosure proceedings." Dkt. 33 at 1. The key factual allegations in the First Amended Complaint are as follows:

> 5. On March 7, 2025, Plaintiff and Defendant entered into a loan and security agreement (the "Deed of Trust") for the property located at 4111 Martin Ridge Dr, Manvel, TX 77578.
>
> 6 . On or about October 24, 2025, Plaintiff sent Defendant a payment in the amount of $533,074.43 , intended to satisfy the loan in full.
>
> 7. On October 31, 2025, a representative of Defendant called Plaintiff. During this call, Defendant's representative **confirmed receipt of the payment** and **instructed Plaintiff to send a second payment in the amount of $627.42** to cure a shortfall.
>
> 8. On November 17, 2025, Plaintiff complied with Defendant's instructions and sent the second payment of $627.42.
>
> 9. On or about December 8, 2025, Defendant **reversed the application of Plaintiff's payments**. Defendant's own account

> history shows a "Misapplication Reversal" of $3,729.84, proving they processed and then removed the funds.
>
> 10. After reversing Plaintiff's payments, Defendant assessed late charges against Plaintiff and declared him in default, despite having received his funds.

*Id.* at 2.

Washington lists two causes of action: (1) breach of the implied covenant of good faith and fair dealing; and (2) violation of the Texas Deceptive Trade Practices Act ("DTPA"). *See id.* at 2–3.

Navy Federal has moved to dismiss the lawsuit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Dkt. 39.

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting Twombly, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory

statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although pro se plaintiffs are held "to a more lenient standard than lawyers when analyzing complaints, . . . pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016).

## ANALYSIS

Navy Federal first argues that "each of [Washington]'s claims is premised on a frivolous theory concerning a 'bill of exchange.'" Dkt. 39 at 3.[1] But the First Amended Complaint says nothing about a "bill of exchange" theory. It is well-settled that a district court considering a Rule 12(b)(6) motion may not look beyond the four corners of the plaintiff's pleadings. *See King v. Baylor Univ.*, 46 F.4th 344, 356 (5th Cir. 2022). Thus, I refuse to recommend dismissal of this lawsuit at the pleading stage based on an unpled theory. If Washington does, in fact, rely on a "bill of exchange" theory as this case progresses, we can address the propriety of such a claim at summary judgment.

Navy Federal next attacks Washington's DTPA claim, arguing that Washington lacks standing to pursue this claim because he is not a "consumer" under the DTPA. To bring a cause of action under the DTPA, Washington must have standing as a "consumer." Tex. Bus. & Com. Code § 17.50(a). The DTPA defines a consumer, in relevant part, as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." *Id.* § 17.45(4). To establish consumer

[1] The so-called "bill of exchange" theory asserts that regular citizens can use homemade financial documents—called "bills of exchange"—to force the United States Treasury to pay off their personal debts, mortgages, and taxes. For what it is worth, the "bill of exchange" theory has been uniformly rejected, with courts from coast to coast describing the theory as having "no basis in law"; "frivolous and a waste of judicial resources"; and "equal parts revisionist legal history and conspiracy theory." *Harvey v. United States Treasury*, No. W-22-ca-789, 2022 WL 3646162, at *2 (W.D. Tex. Aug. 9, 2022) (quotations omitted) (collecting cases).

status under the DTPA, a plaintiff must show: (1) that he acquired goods or services by purchase or lease; and (2) "that the goods or services purchased or leased . . . form the basis of the complaint." *Sherman Simon Enters. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987). Whether Washington is a consumer under the DTPA is a question of law. *See Hou. Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 572 (Tex. App.—Austin 2003, no pet.).

"Generally, a pure loan transaction lies outside the DTPA because money is considered to be neither a good nor a service." *BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (quotation omitted). A mortgagor may qualify as a consumer under the DTPA only if his "primary objective in obtaining the loan was to acquire a good or service, and *that good or service forms the basis of the complaint*." *Id.* (emphasis added). Here, Washington complains that Navy Federal improperly reversed his loan payments and wrongfully initiated foreclosure proceedings. The obstacle Washington encounters is that loan servicing activities do not satisfy the DTPA's "goods and services" requirement. *See, e.g.*, *Payne v. Wells Fargo Bank, N.A.*, 637 F. App'x 833, 837 (5th Cir. 2016) ("[S]ervicing or administration of the loan is incidental to . . . [acquiring a good or service], and does not bestow [DTPA] consumer status."); *Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 279 (5th Cir. 2014) (Plaintiff "is not a consumer under [the DTPA] because the basis of her claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services acquired in the original transaction."). Because Washington has not established that he is a consumer under the DTPA, his DTPA claim should be dismissed.

Navy Federal also challenges Washington's claim for breach of the implied covenant of good faith and fair dealing. Under Texas law, "a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power." *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708–09 (Tex. 1990). Texas courts have consistently held that the mortgagor-mortgagee relationship is not a special relationship that gives rise to a

fiduciary duty. *See id.* at 709–10 ("The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."); *Johnson v. Wilmington Tr., N.A.*, No. H-18-489, 2019 WL 2453448, at *10 (S.D. Tex. May 16, 2019) ("Texas law does not recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power." (quotation omitted)). Because Washington has not alleged a special relationship between himself and Navy Federal outside the mortgagor-mortgagee relationship, his claim for breach of the implied covenant of good faith and fair dealing fails.

Although I recommend that Washington's DTPA and implied covenant of good faith and fair dealing claims be dismissed, this lawsuit should not be dismissed in its entirety. As my colleague, Judge Drew Tipton, has observed:

> The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 604 (5th Cir. 1981)); *see also Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021). Where the plaintiff fails to correctly identify the legal theory giving rise to the claim, the Fifth Circuit has long established that if the plaintiff asserts "a valid claim, even if inartfully stated, the liberal approach of the federal rules requires that the plaintiff be given the opportunity to state his claim and to have it considered on the merits at trial or on motion for summary judgment." *Dussouy*, 660 F.2d at 604.

*Harrington v. City of Shiner*, No. 6:20-cv-00039, 2022 WL 4553127, at *2 (S.D. Tex. Sept. 29, 2022).

Washington identifies only two claims in the operative pleading: DTPA violations and breach of the implied covenant of good faith and fair dealing. Even so, the thrust of Washington's complaint is that he paid his loan in full, but Navy Federal reversed his payments in violation of the underlying contractual agreements. That is a breach of contract claim. Washington puts Navy Federal on

notice of a breach of contract claim in the introduction of the First Amended Complaint by stating that "Defendant's conduct was . . . a breach of contract." Dkt. 33 at 1. A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Examining the allegations of the [First Amended] complaint, [I] find actions by [Navy Federal] that would support recovery under" a breach of contract theory. *Dussouy*, 660 F.2d at 604. I thus recommend that Washington's live pleading be viewed as bringing a breach of contract claim. This approach is consistent with the Supreme Court's mandate that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quotation omitted).

## CONCLUSION

For the reasons discussed above, I recommend that Navy Federal's motion to dismiss (Dkt. 39) be granted in part and denied in part. Specifically, I recommend that Washington's claims for DTPA violations and breach of the implied covenant of good faith and fair dealing be dismissed, but that Washington be allowed to proceed past the pleading stage on a breach of contract claim.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 1st day of September 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE